UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOSEPHINE ROSARIO, by her Attorney-in-Fact, DAVID ROSARIO,<br><br>Plaintiff,<br><br>vs.<br><br>GENESIS HEALTHCARE CORPORATION d/b/a LOPATCONG CENTER; ABC CORPORATIONS (1-5); and JOHN DOES (1-5), fictitious names,<br><br>Defendants. | Civil Action No.<br><br>COMPLAINT and<br>JURY DEMAND |

Plaintiff, Josephine Rosario, by her Attorney-in-Fact, David Rosario, by way of this Complaint, alleges:

## I.   PARTIES

1. Plaintiff, Josephine Rosario, is an adult citizen of the United States and resides at Valley View Nursing Home, 11 Everittstown Road, Frenchtown Borough, Hunterdon County, New Jersey.

2. David Rosario is the natural adult son of Josephine Rosario and is citizen of the United States and resides at 419 Firth Street, Town of Phillipsburg, Warren County, New Jersey.

3. On or about June 28, 2010, Plaintiff, being of sound mind and disposition, gave to David Rosario a Durable Power of Attorney effective that date to manage all of her legal and financial affairs.

4. Defendant, Genesis HealthCare Corporation, is a for-profit business entity in the business of geriatric care, nursing home care and/or elder care, with a principal place of business at 101 East State Street, Kennet Square, Chester County, Pennsylvania, and which operates a nursing home facility at 390 Red School Lane, Lopatcong Township, Warren County, New Jersey, doing business as Lopatcong Center.

## II.   JURISDICTION & VENUE

5. Jurisdiction of this Court is conferred by 28 U.S.C. §1332(a) by virtue of the parties' diversity of citizenship and the amount in controversy.

6. Venue is proper in this Court pursuant to 28 U.S.C. §1391(a)(2).

## III.   FACTUAL ALLEGATIONS

7. On or about January 25, 2011, Plaintiff was a seventy-four (74) year-old resident at the Lopatcong Center where she had been admitted on or about May 22, 2010, following treatment for respiratory issues related to chronic obstructive pulmonary disease via ventilator with a tracheostomy. The goal of her stay at the Center was to wean her from the trach, provide rehabilitation therapy, and prepare her for a return to her home. Plaintiff was alert, oriented, cooperative with care and able to converse without limitation. At approximately 1:00 A.M., Plaintiff was sitting bedside and was checked by, and talking to, the certified nursing assistant assigned to her, whose identity is reasonably believed to be Defendant's employee Tammy Johnson. By 2:00 A.M., Plaintiff was found sitting bedside, leaning at the bedside table unresponsive with the tracheostomy brush stuck in the trach opening. Defendant's workers moved Plaintiff to the bed and removed the brush and the trach. Once the trach was cleared,

cardio pulmonary resuscitation (CPR) was initiated and automated external defibrillator (AED) applied. A call to 911 was made and the emergency medical services personnel (EMS) arrived at the Center whereupon Plaintiff was taken from the Center via stretcher and transferred to the emergency room at Warren Hospital. When Plaintiff left the Center, she was still unresponsive. She was suffering from respiratory arrest upon the EMS personnel's arrival at the Center and Defendants' personnel at the Center admitted to initiating CPR without first checking for a pulse on Plaintiff.

8. When Plaintiff was admitted to Warren Hospital Intensive Care Unit on January 25, 2011, her attending physician immediately requested a neurological consultation, which was performed by a neurologist. During the neurological examination, Plaintiff opened her eyes to loud verbal stimulus, but without constant stimulation, her eyes would again close. The neurologist's impression was hypoxic ischemic encephalopathy (damage to the brain due to lack of oxygen) with an indeterminate prognosis. Plaintiff remained unresponsive in the Warren Hospital Intensive Care Unit through January 28, 2011, when it was determined that nothing could be done to improve her condition and that she would receive better continuity of care and more specialized equipment/services at Good Shepherd Rehabilitation Hospital. Because Plaintiff's convalescence at Good Shepherd Rehabilitation Hospital was not successful, Plaintiff was transferred to Valley View Health Care Center for her remaining days.

9. As of this date, Plaintiff remains at the Valley View Health Care Center. She is unresponsive except to tactile stimuli which cause her eyes to open momentarily with roving eye movements which illustrate fear. She remains fully ventilated and tube-fed. Her condition is irreversibly permanent. Plaintiff requires around-the-clock specialized care. She cannot communicate. She cannot feed, bathe or care for herself in any manner. When her family visits,

Plaintiff is incapable of interacting with them. Plaintiff's appearance is one of pain, frustration, distress and anxiety. Plaintiff's attending physician has confirmed that her condition will not improve. Rather, she will continue to struggle in silence until such time as her body can no longer bear the suffering.

10. At all times relevant herein, Defendant acted individually, collectively, and/or by and through its agents, servants, workers and/or employees, who are more particularly described herein, and who acted within the course and scope of their employment and in furtherance of their and the Defendant's business and professional interests.

11. At all times relevant herein, Plaintiff looked to Defendant individually, collectively, and/or by and through its agents, servants, workers and/or employees for medical diagnosis, medical treatment and medical care relating to the injuries, ailments and maladies suffered by Plaintiff which are more particularly described herein.

12. At all times relevant herein, Defendant individually, collectively, and/or by and through its agents, servants, workers and/or employees held-out and represented to Plaintiff, and to the general public, it they was competent and qualified to perform the medical and health care tasks, procedures and treatments for which they were licensed and certified by the State of New Jersey to perform, including, but not limited to, geriatric medicine, nursing home care and/or elder care.

13. At all times relevant herein, Defendant individually, collectively, and/or by and through its agents, servants, workers and/or employees had a duty to possess and to exercise the degree of professional skill and knowledge ordinarily possessed and exercised by nursing home and elder care facilities, physicians, nurses and nursing assistants within their respective disciplines of medicine.

14. Defendant and its agents, servants, workers and/or employees are medical professionals and this action is a medical professional liability action. Accordingly, counsel verifies that a licensed professional has supplied a written statement to the undersigned that there is a basis to conclude that the care, skill or knowledge exercised or exhibited by this Defendant and its agents, servants, workers and/or employees herein, in the treatment, practice or work that is the subject of this Complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm to Plaintiff; and the claim that Defendant and its agents, servants, workers and/or employees, deviated from an acceptable professional standard is based solely on allegations that the other licensed professionals named herein for whom these Defendants are responsible deviated from an acceptable professional standard and an appropriate licensed professional has supplied a written statement to the undersigned that there is a basis to conclude that the care, skill or knowledge exercised or exhibited by the other licensed professionals in the treatment, practice or work that is the subject of this Complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm to Plaintiff.

15. Defendant and its agents, servants, workers, and/or employees herein deviated, from accepted standards within their area of medical care and treatment as more particularly described in this Complaint.

16. Plaintiff suffered her injuries as a direct result of each of Defendant's and its agents, servants, workers and/or employees' conduct, acts and/or omissions herein either individually and/or jointly.

17. As a direct and proximate result of Defendant's and its agents, servants, workers and/or employees' conduct, acts and/or omissions, as more specifically set forth below, individually and/or jointly, Plaintiff, suffered permanent serious bodily injury consisting of: hypoxic ischemic encephalopathy, asphyxiation resulting in semi-consciousness, post traumatic stress disorder, depression, fear, anxiety and/or other mental and physical injuries as a result of which she was rendered sick, sore and disabled, all of which have been to her great financial loss.

18. As a direct and proximate result of the above-described occurrence, Plaintiff has suffered great mental anguish and physical pain up to the date of the filing of this Complaint, all of which have been to her great financial loss.

19. As a direct and proximate result of the above-described occurrence, Plaintiff will continue to suffer great mental anguish and physical pain into the future, all of which will have been to her great financial loss.

20. As a direct and proximate result of the above-described occurrence, Plaintiff has incurred substantial medical expenses to date, all of which have been to her great financial loss.

21. As a direct and proximate result of the above-described occurrence, Plaintiff will have to expend large sums of money into the future due to the nature of her injuries sustained in this incident, all of which will have been to her great financial loss.

22. As a direct and proximate result of the above-described occurrence, Plaintiff has been unable to pursue her customary social, recreational, vocational and domestic activities in the same manner for extended periods of time from the date of the incident upon which this cause of action is based, to the date of the filing of this Complaint, all of which have been to her great financial loss.

23. As a direct and proximate result of the above-described occurrence, Plaintiff will be unable to pursue her social, recreational, vocational and domestic activities for extended periods of time into the future, all of which will have been to her great financial loss.

24. As a direct and proximate result of the above-described occurrence, Plaintiff will suffer a loss of earning power and capacity in the future, all of which will have been to her great financial loss.

25. As a direct and proximate result of the above-described occurrence, Plaintiff has been unable to pursue and to enjoy the usual activities of the life of an individual of Plaintiff's age and has suffered a loss of enjoyment of life, loss of life expectancy, loss of happiness and loss of the pleasure of life up to the date of the filing of the Complaint, all of which have been to her great financial loss.

26. As a direct and proximate result of the above-described occurrence, Plaintiff will, in the future, be unable to pursue and enjoy the usual activities of life of an individual of Plaintiff's age, and will suffer a loss of enjoyment of life, loss of life expectancy, loss of happiness and loss of the pleasures of life throughout the remainder of her life, all of which will have been to her great financial loss.

## IV. CLAIMS FOR RELIEF

## COUNT I

## (v. GENESIS HEALTHCARE CORPORATION)

27. The Plaintiff incorporates by reference the allegations contained in paragraphs one through twenty-six, inclusive, as though same were set forth herein at length.

28. The aforesaid injuries and damages suffered by Plaintiff more fully set forth herein were directly, proximately and legally substantially caused by the negligence, carelessness, gross negligence, recklessness, willful and knowing acts and/or failures to act of Defendant, Genesis HealthCare Corporation, in that it acting individually, collectively, and/or by and through its agents, workers, servants and/or employees, who were working within the course and scope of their employment, *inter alia*, did the following:

(a) allowed a certified nursing assistant (CNA), who is reasonably believed to be Tammy Johnson, to perform a medical procedure (trach tube cleaning) which CNAs are not permitted to perform;

(b) performed an invasive medical procedure (trach tube cleaning in Plaintiff's body) which is not supposed to be performed with the trach in the patient's body;

(c) failed to train authorized care-givers (registered nurses or supervised licensed practical nurses) on the correct method to perform trach tube cleaning;

(d) allowed authorized care-givers (registered nurses or supervised licensed practical nurses) to direct or to delegate unauthorized care-givers (CNAs) to perform non-delegable duties (invasive trach tube cleaning) of medical care and treatment to Plaintiff;

(e) allowed Plaintiff unfettered and unsupervised access to trach tube cleaning equipment;

    (f)    failed to comply with controlling law in the administration of medical care and treatment to Plaintiff given her medical condition;

    (g)    routinely permitted its agents, workers, servants and/or employees to administer sub-standard medical care and treatment to Plaintiff; and/or

    (h)    otherwise failed to exercise ordinarily reasonable care in the medical care and treatment furnished to Plaintiff.

29. As a direct and proximate result of the above described occurrences, Plaintiff was caused to suffer injuries to her bones, joints, muscles, tendons, blood vessels and soft tissues throughout her entire body, both internally and externally, all of which caused her injuries.

30. As a direct and proximate result of the above described occurrences, Plaintiff has been, and in the future will be, obliged to expend various and diverse sums of money for medicine and medical treatment in an effort to cure the above injuries of Plaintiff, all to her great loss and detriment.

31. As a result of the above described occurrences, Plaintiff has suffered physical pain, mental anguish, anxiety, embarrassment and humiliation and will continue to suffer the same for an indefinite period of time in the future, all to her great loss and detriment.

32. As a result of the above described occurrences, Plaintiff has been unable to engage in her usual and customary domestic, vocational, social and recreational activities and other life's pleasures and will be prevented from engaging in such activities in the future, all to her great loss and detriment.

33. The aforesaid acts of negligence, carelessness, gross negligence, recklessness, willful and knowing acts and/or failures to act by Defendant and/or its workers, agents, servants and/or employees, created a high degree of risk of harm to Plaintiff, which harm, in fact, did occur as set forth herein.

WHEREFORE, the Plaintiff, Josephine Rosario, by her Attorney-in-Fact, David Rosario, respectfully requests that:

a) This Court award the Plaintiff compensatory damages in an amount be proved at trial;

b) This Court award the Plaintiff punitive damages for the Defendants' gross negligence, recklessness and/or willful and wanton conduct;

c) This Court award the Plaintiff reasonable attorney's fees and costs of suit; and

d) This Court award such other and further relief as this Court deems just and equitable.

## COUNT II

### (as to ABC Corporations (1-5) and John Does (1-5))

34. The Plaintiff incorporates by reference the allegations contained in paragraphs one through thirty-three, inclusive, as though same were set forth herein at length

35. Plaintiff hereby pleads a Count against ABC Corporations (1-5) and John Does (1-5), fictitious individuals and/or business entities, pursuant to temporarily suffice for the presently unknown identities of other defendant parties who/which, are deemed to include corporations, partnerships and any and all other individuals who/which may have played any role whatsoever in contributing to the injuries and damages sustained by Plaintiff more specifically described herein.

36. At such times as the identities of such fictitiously pleaded defendants are ascertained, Plaintiff shall seek leave to amend this Complaint so as to substitute the actual names of said parties for the fictitious names set forth herein.

37. Plaintiff attributes each and every act of negligence and damages alleged against the named Defendant hereto to those who are fictitiously pleaded as if they were more specifically set forth in their entirety.

WHEREFORE, the Plaintiff, Josephine Rosario, by her Attorney-in-Fact, David Rosario, respectfully requests that:

a) This Court award the Plaintiff compensatory damages in an amount be proved at trial;

b) This Court award the Plaintiff punitive damages for the Defendants' gross negligence, recklessness and/or willful and wanton conduct; and

c) This Court award the Plaintiff reasonable attorney's fees and costs of suit;

d) This Court award such other and further relief as this Court deems just and equitable.

### DEMAND FOR JURY TRIAL

Pursuant to F. R. Civ. P. 38(b), the Plaintiff hereby demands a trial by jury.

**WINEGAR, WILHELM, GLYNN & ROEMERSMA, P.C.**

*/s/ SCOTT M. WILHELM*
**SCOTT M. WILHELM, ESQ.**
305 Roseberry Street, P.O. Box 800
Phillipsburg, New Jersey 08865
Telephone: (908)454-3200
Facsimile:  (908)454-3322
wilhelms@verizon.net
*Counsel for the Plaintiff*

Dated: November 17, 2011